# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: BRUCE A. LARSEN,                          No. 7-06-10963 MR

      Debtor.

_____

ROSWELL FORD LINCOLN MERCURY, INC.,

      Plaintiff,

v.                                                           Adversary No. 06-1175 M

BRUCE A LARSEN,

      Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER to determine the dischargeability of a particular debt is before the Court after a trial on the merits held in Roswell, New Mexico on May 29, 2007. At issue is whether a certain debt to Plaintiff Ford Lincoln Mercury, Inc. ("Roswell Ford") arising from a check upon which Defendant Bruce Larsen (hereinafter, Mr. Larsen, or Defendant) issued a stop-payment is non-dischargeable as a debt for money procured by false pretenses, a false representation, or actual fraud under 11 U.S.C. § 523(a)(2)(A) and/or as a debt resulting from willful and malicious injury under 11 U.S.C. § 523(a)(6). Having considered the testimony and evidence presented at trial, and being otherwise sufficiently informed, the Court finds that Plaintiff has failed to sustain its burden of proof under either section. The debt is, therefore, dischargeable.

### FINDINGS OF FACT

1. On or about May 9, 2005, Defendant gave a check payable to Roswell Ford in the amount of $19,266.99 ("Check") to Freda Radcliff. The Check was written on Defendant's business account. The purpose noted on the Check was "05 Mustang." *See* Plaintiff's Exhibit 1.

1

2. The date on the Check was left blank.

3. Funds sufficient to cover the Check were dependent upon the sale of certain real estate, which Defendant anticipated would close by June 23, 2005.

4. Defendant believed that the Check would not be cashed immediately, but would be used to "hold" or "earmark" the car for purchase.

5. Freda Radcliff took the Check to Roswell Ford and used it along with a trade in on another vehicle to obtain a 2005 Ford Mustang. The trade in value of the existing car together with the Check equaled the purchase price for the 2005 Ford Mustang. Ms. Radcliff left Roswell Ford driving the 2005 Ford Mustang.

6. Roswell Ford knew when Ms. Radcliff presented the Check that the Check was not dated and would need to be held until a later date. Because of this, Roswell Ford had Ms. Radcliff sign a promissory note in the amount of $19,266.99. (*Testimony of Wayne Fentor* - Roswell Ford's then standard procedure was to have the customer execute a promissory note when Roswell Ford is asked to hold a check). The notation on the promissory note says "hold until 5-23-05." *See* Exhibit 1 to Defendant's Exhibit A, Complaint on Contract, Promissory Note, Check and for Writ of Attachment and Preliminary Restraining Order ("Complaint").

7. On or about May 12, 2005, Freda Radcliff came to Defendant's office. She was driving the 2005 Ford Mustang. Defendant confronted Freda Radcliff, informed her that he did not intend to honor the Check, and told her that she needed to return the 2005 Ford Mustang to Roswell Ford.

8. On May 12, 2005 Defendant instructed his bank to stop payment on the Check.

9. Roswell Ford released the title to the 2005 Ford Mustang to Freda Radcliff on May

23, 2005 in reliance on the Check and the value of the trade-in car as payment in full.

10. In the period between May 12, 2005 and May 23, 2005, Defendant attempted to reach Roswell Ford by telephone, but never informed anyone at Roswell Ford that he had instructed his bank to stop payment on the Check.

11. Roswell Ford obtained a judgment against Defendant in the state court in the amount of $19,266.99, plus interest, based upon Defendant's wrongful action to stop payment on the Check. *See* Plaintiff's Exhibit 3.

12. Defendant was a licensed attorney practicing law in Hobbs, New Mexico during the time this transaction occurred.

## CONCLUSIONS OF LAW

1. Exceptions to discharge are to be construed narrowly, with any doubts resolved in favor of the debtor in permitting the debt to be discharged. *Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir. 1986) (exceptions to discharge are narrowly construed); *Bank One Columbus, N.A. v. Schad (In re Kountry Korner Store),* 221 B.R. 265, 269 (Bankr.N.D.Okla. 1998) (noting that questions of dischargeability "must begin with the recognition that exceptions to discharge are narrowly construed and any doubts must be resolved in favor of permitting the debtor to discharge the debt.") (citing *Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir.1997)).

2. The party seeking to have a debt determined non-dischargeable bears the burden of proof, and must prove each required element to except a debt from discharge under any of the subsections of 11 U.S.C. § 523 by a preponderance of the evidence standard. *See Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (establishing preponderance

3

of the evidence standard for dischargeability actions); *Driggs v. Black,* 787 F.2d at 505 (the objecting party bears the burden of proving that the debt falls within a statutory exception to discharge).

3. Pursuant to 11 U.S.C. § 523(a)(2)(A), debts for money that are obtained though false pretenses, a false representation, or actual fraud are non-dischargeable. 11 U.S.C. § 523(a)(2)(A). To prevail under this section, a plaintiff must establish the following elements:

> The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was [justifiable]; and the debtor's representation caused the creditor to sustain a loss.
>
> *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir.1996); *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (rejecting the more stringent standard of reasonable reliance, and finding that § 523(a)(2)(A) requires only "justifiable" reliance).

4. A worthless check, or a check for which there are insufficient funds to honor payment, can form the basis of a non-dischargeable debt. *See, e.g., Designed Flooring Distributors, Inc. v. Wagenti (In re Wagenti),* 110 B.R. 602, 604 (Bankr.S.D.Fla. 1990) (finding that a debtor who knowingly issues a worthless check and orally represents that the check will be honored has made a false representation within the meaning of § 523(a)(2)(A)). However, to establish that a dishonored check is non-dischargeable under 11U.S.C. § 523(a)(2)(A), the creditor must show that at the time the check was presented, the debtor had no present intent to pay. *See Tusco Grocers, Inc. v. Coatney (In re Coatney),* 185 B.R. 546, 550 (Bankr.N.D.Ohio 1995) (finding that "[a]ny positive statement regarding the nature of Defendant-Debtors' bank balance or their intent to pay the debt could only be actionable pursuant to § 523(a)(2)(A) if the statements were made at the same time that the checks at issue were cut and transferred.") (citation omitted). *See also, Kountry Korner Store,* 221 B.R. at 272 (determining within the

4

context of a failure to repay credit card debt, that such debt can be non-dischargeable under § 523(a)(2)(A) if the creditor can show that "the debtor had no actual present intent to ever repay the debt at the time the debt was incurred"). In other words, a check which does not clear the bank is insufficient to establish non-dischargeability under 11 U.S.C. § 523(a)(2)(A) absent other circumstantial evidence of intent. *See Goldberg Securities, Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 524-525 (7th Cir. 1992) (holding that act of tendering a check for which there were no assets does not constitute a "false pretense" within the meaning of § 523(a)(2)(A)); *In re Sanchez,* 277 B.R. 904, 908 (Bankr.N.D.Ill. 2002) ("Generally, the utterance of a bad check, without more, is insufficient to show a false misrepresentation.") (citing *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) (remaining citation omitted)); *City Wholesale Grocery Co., Inc. v. Pike (In re Pike),* 79 B.R. 41, 43 (Bankr.N.D.Ala. 1987) ("The issuance of a worthless check to purchase goods does not, in itself, constitute fraud so as to preclude the discharge of the debt pursuant to § 523(a)(2)(A).")(citations omitted).

5. In this case, Defendant stopped payment on the Check after he had given it to Freda Radcliff, and after the Check had presumably been presented to Plaintiff by Ms. Radcliff. When Defendant issued the Check he anticipated that he would have funds available by June 23, 2005 to cover the check; consequently, he did not date the Check. Plaintiff has not shown that Defendant never intended to honor the Check when it was written or at the time it was first presented to Plaintiff by Ms. Radcliff. The Court, therefore, concludes that the presentation of the Check to the Plaintiff did not constitute a false representation or false pretense by Defendant made with the requisite intent to deceive Plaintiff that would render the debt non-dischargeable within the meaning of 11 U.S.C. § 523(a)(2)(A). Nor does Defendant's subsequent action to

5

stop payment on the Check indicate in this instance that Defendant never intended to honor the Check. *Cf. Georgetown Village Apartments v. Fontana (In re Fontana),* 92 B.R. 559, 561-562 (Bankr.M.D.Ga. 1988) (stopping payment on a check without evidence that debtor intended to stop payment at the time the check was given to plaintiff is insufficient to show an intent to deceive). *But compare, Kline's Service Center, Inc. v. Fitzgerald (In re Fitzgerald),* 109 B.R. 893, 901 (Bankr.N.D.Ind. 1989) (finding that debt represented by check which debtor used to obtain possession of repaired vehicle and then stopped payment on evidenced debtor's initial intent to deceive creditor and was non-dischargeable as a debt for fraud).

6. Plaintiff contends that it justifiably relied on the Check. Reliance is not justifiable when the misrepresentation or falsity is readily apparent by a cursory review or examination and could have been detected at the time by the recipient of the misrepresentation through the use of his senses. *Field v. Mans,* 516 U.S. at 71. Because the Court finds that Defendant did not make a false representation with intent to deceive Plaintiff, the Court does not reach the element of reliance. Plaintiff's release of the title to the 2005 Ford Mustang before determining whether the Check had cleared the bank does not seem a very prudent business practice, especially given that the Check was either undated or post-dated when presented to Plaintiff on or about May 9, 2005 and that the Check was drawn on an account that did not belong to the customer.

7. Pursuant to 11 U.S.C. § 523(a)(6), a debt that is the result of a willful and malicious injury is non-dischargeable. 11 U.S.C. § 523(a)(6). To except a debt from discharge under this subsection, the act must be both willful and malicious. *Id. See also, In re Tinkler,* 311 B.R. 869, 879 (Bankr.D.Colo. 2004) (noting confusion exists in the case law as to whether the Supreme Court's decision in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)

"essentially collapsed the 'willful and malicious' inquiry into a unitary standard that embraces both willfulness and malice" but finding that the court must give effect to each element of the statute, i.e., both the willful and the malicious components of § 523(a)(6)).

8. To be willful, the debtor must commit an intentional act as well as intend the resulting harm. *See Kawaauhau v. Geiger*, 523 U.S. 57 at 61 (holding that § 523(a)(6) requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.")(emphasis in original); *In re Tucker,* 346 B.R. 844, 853 (Bankr.E.D.Okla. 2006)("Nondischargeability under this section requires an intent to do harm, not just an intentional act.") (citing *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 462-63 (6th Cir.1999)).

9. "[T]he language of § 523(a)(6) is reserved for *intentional acts* which inflict *intended injury*, not reckless or negligent behavior which results in injury or intentional acts which result in unintended injury." *In re Edie,* 314 B.R. 6, 14 (Bankr.D.Utah 2004) (paraphrasing the Supreme Court's clarification of § 523(a)(6) articulated in *Kawaauhau v. Geiger*)(emphasis in original). Nevertheless, while "'[willful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property . . . . [w]illful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's . . . rights and the debtor's knowledge that the conduct will cause particularized injury.'" *Tinkler,* 311 B.R. at 879 (quoting *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley),* 235 B.R. 651, 657 (10th Cir. BAP 1999)).

10. In this case, Defendant readily admits that he intentionally stopped payment on the Check. Therefore, Defendant committed a deliberate act, and the first prong of the willfulness

7

inquiry has been satisfied. The next question is whether his intentional act was also willful. In finding that an intentional act is willful within the meaning of 11 U.S.C. § 523(a)(6), Defendant must have either intended to cause Plaintiff harm, "'or at least believed [the harm] was substantially certain to occur.'" *Tinkler,* 311 B.R. at 879 (quoting *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart),* 229 F.3d 1163, 2000 WL 1276514 *3 (10th Cir. 2000) (Table)).

11. It is clear from the facts presented that Defendant intended to stop the transaction by stopping payment on the Check. But the evidence does not indicate that Defendant intended to harm Plaintiff. Nor do the facts indicate that Defendant could have expected that Plaintiff would be harmed, since title to a car normally does not pass to the buyer until payment is received in full, and in this case, Plaintiff released the title to Ms. Radcliff after Defendant had stopped payment on the Check. Based on these facts and circumstances, the Court finds that Defendant did not act willfully within the meaning of 11 U.S.C. § 523(a)(6).

12. The second issue under 11 U.S.C. § 523(a)(6) is whether the Defendant's actions were malicious. "Malicious" under 11 U.S.C. § 523(a)(6) encompasses willful actions taken without justification or excuse. *See Tinkler,* 311 B.R. at 880 (finding "that the malice prong of 11 U.S.C. § 523(a)(6) is satisfied upon a showing [that] the injury was inflicted *without just cause or excuse.*")(emphasis in original)(citations omitted). *See also, In re Paul,* 266 B.R. 686, 696 (Bankr.N.D.Ill. 2001) (articulating the test for maliciousness under 11 U.S.C. § 523(a)(6) as follows: "(1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse.")(citing *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir. 1994) (maliciousness means conscious disregard of one's duties without just cause or excuse)).

8

13. As determined above, the purpose of stopping payment on the Check was not to harm Plaintiff, but rather to prevent completion of the transaction by Freda Radcliff. Moreover, given that the Check was dated without Defendant's permission, the Court finds that Defendant's action to stop payment on the Check was not done without justification or excuse and is, therefore, not malicious within the meaning of 11 U.S.C. § 523(a)(6). The state court finding that stopping payment on the Check was "wrongful" likewise fails to establish maliciousness within the meaning of 11 U.S.C. § 523(a)(6). *See, Paul,* 266 B.R. at 696 (noting that while "[a] debtor does not have to act with ill will or a specific intent to do harm to the creditor for his conduct to be malicious . . . . just because an act is wrongful does not mean it is automatically malicious.") (citing *Thirtyacre,* 36 F.3d at 700 and *In re Russell,* 262 B.R. 449, 455 (Bankr.N.D.Ind. 2001)(citing *In re Posta*, 866 F.2d 364, 367 (10th Cir.1989)).

Based on the foregoing, the Court concludes that Plaintiff has failed to meet its burden of proof under either 11 U.S.C. § 523(a)(2)(A) or (a)(6), and the debt at issue in this adversary proceeding is dischargeable. These Findings of Fact and Conclusions of Law are entered pursuant to Rule 7052, Fed.R.Bankr.P. A judgment consistent with these findings and conclusions will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Marion J Craig, III
Attorney for Plaintiff
PO Box 1436
Roswell, NM 88202-1436

Bruce Larsen
Defendant
7712 Harwood NE
Albuquerque, NM 87110

9